UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BRENDA THOMPSON,

                    Plaintiff(s),

    v.

ALLSTATE INSURANCE COMPANY,

                   Defendant(s).

Case No. 2:17-CV-181 JCM (VCF)

ORDER

Presently before the court is plaintiff Brenda Thompson's ("plaintiff") motion for partial summary judgment regarding "no reasonable basis to refer Mrs. Thompson to the Special Investigation Unit." (ECF No. 68). Defendant Allstate Insurance Company ("defendant") filed a response (ECF No. 80), to which plaintiff replied (ECF No. 82).

Also before the court is plaintiff's motion for partial summary judgment regarding breach of the duty to cooperate. (ECF No. 70). Defendant filed a response (ECF No. 79), to which plaintiff replied (ECF No. 81).

Also before the court is defendant's motion for summary judgment. (ECF No. 72). Plaintiff filed a response (ECF No. 77), to which defendant replied (ECF No. 83).

Also before the court is plaintiff's motion to strike defendant's reply. (ECF No. 87). Defendant filed a response (ECF No. 89), to which plaintiff replied (ECF No. 90).

## I.    Background

The instant action arises from a dispute regarding insurance payments for two motor vehicle accidents. Plaintiff was insured by defendant under an automobile policy that included $50,000 in medical payment coverage per incident. (ECF No. 68 at 2). On May 8, 2013, plaintiff was in a car accident. *Id.* Plaintiff was in a second car accident on January 23, 2014.

*Id.* Plaintiff's complaint is scant on details, but she alleges that "[defendant] routinely denied [her] claims and unreasonably delayed in paying legitimate claims" pertaining to both accidents. (ECF No. 1 at 2).

Plaintiff received care from Dr. Marjorie Belsky at Integrated Pain Specialist ("IPS"). *Id.* Plaintiff alleges defendant refused and delaying paying Dr. Belsky, who refused to provide treatment to plaintiff due to the unpaid bills. *Id.* Meanwhile, defendant was investigating—and ultimately filed suit against—Dr. Belsky for defrauding patients and insurers by providing unnecessary medical care to patients and submitting false billings to insurers. *Id.* at 3.

Plaintiff was seeing Dr. Belsky "about once per month" for treatment. (ECF No. 77 at 6). However, defendant closed plaintiff's May 8 claim on January 9, 2014. *Id.* Defendant claims that it received a bill for treatment on November 4, 2013, and did not receive any information suggesting that plaintiff was still seeing Dr. Belsky thereafter. (ECF No. 72 at 16). Defendant argues that it properly closed coverage on that basis. *Id.*

Defendant represents that "there would be no prohibition of re-opening the coverage should additional facts be made known to the adjuster." *Id.* Defendant further argues that "[h]ad additional bills been received, there was nothing keeping [defendant] from reopening the first claim." (ECF No. 83 at 4). However, defendant "specifically instructed IPS of the new claim number related to the second accident." (ECF No. 72 at 15–16). After the first claim was closed, Dr. Belsky "submitted a number of its bills following the second accident under the first claim number." *Id.* at 16. Although there was supposedly no prohibition on re-opening the first claim, defendant kept the May 8 claim closed.

Defendant then referred plaintiff's insurance claims to the "special investigation unit" ("SIU"), which was designated to investigate suspicious claims. (ECF No. 80 at 5). Defendant "does not deny that it has a special investigation unit to investigate suspicious claims, that it investigated Belsky's business practices, or that it referred [plaintiff's] claims . . . to the SIU for investigation because she was receiving treatment from Belsky." *Id.* at 5–6.

The SIU never reviewed any of Dr. Belsky's medical records. (ECF No. 77 at 8). Nonetheless, the SIU retained Dr. Robert Berry to perform record reviews of plaintiff's file. *Id.*

at 9. Although defendant did not provide Dr. Berry with complete medical records, Dr. Berry did not criticize Dr. Belsky's medical care. *Id.* The SIU requested an independent medical exam, but later submitted plaintiff's file for a second record review. *Id.* at 10. Once again, defendant did not provide the reviewing doctor, Dr. Andrew Kim, with complete records. *Id.* Like Dr. Berry, Dr. Kim did not criticize Dr. Belsky's treatment. *Id.*

The SIU again demanded that plaintiff submit to an independent medical exam. *Id.* at 11–12. Dr. Cesar Estela performed the medical exam and, like Drs. Berry and Kim, did not criticize Dr. Belsky's treatment. *Id.* at 12. However, Dr. Estela concluded that plaintiff had reached "maximum medical improvement" ("MMI") on her claim, meaning "medical treatment would not improve [plaintiff's] underlying medical condition." *Id.* Defendant closed plaintiff's claim accordingly. *Id.* Plaintiff argues, however, that MMI "was not a condition to medical payment coverage" under her policy. *Id.*

## II.    Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on

each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.    Discussion

### A.    Defendant's motion for summary judgment

As an initial matter, the court denies plaintiff's motion to strike defendant's reply or, in the alternative, supplement the record.  (ECF No. 84).  Plaintiff's motion is tantamount to a surreply, which is "not permitted without leave of court," and "motions for leave to file a surreply are discouraged."  LR 7-2(d).  To be clear, plaintiff argues that portions of defendant's reply should be stricken because they consist of new arguments not raised in the initial motion. (*See generally* ECF No. 84).  Plaintiff then addresses each of the new arguments before concluding that they should be stricken or, alternatively, plaintiff should be able to file another opposition. *Id.*

The court finds that defendant's reply is responsive to plaintiff's opposition and, to the extent anything was not raised in the initial motion, plaintiff has had ample opportunity to litigate the issues in its own motions for partial summary judgment.  (*See* ECF Nos. 68; 70).  Moreover, the court is fully capable of reviewing the record and evidence before it when adjudicating the instant motion.[1]  Accordingly, plaintiff's motion to strike is denied.

The court now turns to defendant's motion for summary judgment.

### 1.    Breach of contract

"In Nevada, insurance policies treated like other contracts, and thus, legal principles applicable to contracts generally are applicable to insurance policies."  *Century Sur. Co. v. Andrew*, 432 P.3d 180, 183 (Nev. 2018) (citations omitted).  In order to succeed on her breach of contract claim, plaintiff has the burden of proving "a material failure of performance of a duty arising under or imposed by agreement."  *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987).

"Whether a party has breached a contract and whether the breach is material are questions of fact."  Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 536 (9th Cir. 2011) (citing *Hoffman v.*

---

[1] For instance, plaintiff rebuts defendant's "new" argument—that it closed the May 8, 2013, claim because of the January 23, 2014 claim—by pointing out that defendant closed the May 8 claim before the second claim.  (ECF No. 84 at 2).  The court can ascertain as much from reviewing the evidence and argument already before it.

*Eighth Judicial Dist. Court*, 523 P.2d 848, 850 (Nev. 1974)); *see also Crowley v. Epicept Corp.*, 883 F.3d 739, 753 (9th Cir. 2018) ("Whether a breach is material is generally a question of fact for the jury.").

Initially, plaintiff made a variety of general claims regarding defendant's delay or denial in paying medical claims. (ECF No. 1). In its motion for summary judgment, however, defendant explains that it timely paid certain bills without issue, paid some medical bills after negotiating with the healthcare provider, and paid other bills—with interest—due to a delay receiving supporting documentation. (ECF No. 72 at 12–16). As to these bills, there is not a genuine issue of material fact to support a breach of contract claim.

However, plaintiff argues that "[defendant] has failed to pay for treatment from Dr. Marjorie Belsky after March 16, 2016. The total unpaid bills total $2,435." (ECF No. 77 at 15). In reply, defendant notes that "[p]laintiff has conceded that only $2,435 of her medical claims are outstanding." (ECF No. 83 at 7). Defendant then requests, without citation to authority, that the court "find that this pending claim is not a material failure of performance of [defendant]'s duty since neither [plaintiff] nor her medical providers submitted these medical records until after the commencement of this lawsuit." *Id.*

Whether defendant's admitted breach of the insurance contract is material is a question of fact, which the jury should decide. Accordingly, the court denies defendant's motion for summary judgment.

### 2. Bad faith

"The duty to act in good faith does not arise from the terms of the insurance contract. Rather, the duty of good faith and fair dealing is imposed by law and the violation of this duty is a tort." *Pulley v. Preferred Risk Mut. Ins. Co.*, 897 P.2d 1101, 1103 (Nev. 1995) (citing *United States Fidelity & Guaranty Co. v. Peterson,* 540 P.2d 1070, 1071 (Nev. 1975)). In a typical failure-to-pay case, a plaintiff proves bad faith by showing "the absence of a reasonable basis for denying benefits and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Falline v. GNLV Corp.*, 823 P.2d 888, 891 (Nev. 1991) (quotation marks, ellipses, and citation omitted). But the Nevada Supreme Court has clarified that the tort

of bad faith is not limited to failure-to-pay cases. *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). In such other cases, the principle is broadly applied: "[b]ad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." *Id.*

Here, plaintiff alleges that defendant unreasonably delayed and denied playing certain claims. (ECF No. 77 at 15–20). Plaintiff further alleges that defendant engaged in unreasonable conduct when handling the claims. *Id.* For instance, plaintiff contends that "[a] reasonable trier of fact can conclude that [defendant] used the 'independent' records reviews and medical exam to find a pretext to terminate [plaintiff]'s medical payment claim." *Id.* at 17. Plaintiff also suggests that "[a] reasonable inference is [defendant] was shopping to find a doctor who would criticize Dr. Belsky's care." *Id.* at 18.

Defendant does not justify its repeated records reviews, its independent medical exam, or the use of three different doctors to do so. (*See generally* ECF Nos. 77; 83). Instead, defendant distinguishes itself from plaintiff's cited authority and summarily concludes that it "acted reasonably by conducting [an] investigation." (ECF No. 83 at 8). To be sure, defendant is justified and entitled to investigate plaintiff's claims, but defendant does nothing to dispel the specter of bad faith that arises from the "doctor-shopping" allegations.

Thus, a genuine issue of material fact exists regarding whether defendant's investigation was reasonable. The court denies defendant's motion for summary judgment as to the bad faith claim.

### 3. Unfair claims practices in violation of NRS 686A.310(1)

Finally, to prevail on her NRS 686A.310(1) claim, plaintiff must prove a violation of one of its subsections. Defendant argues that "[p]laintiff's [c]omplaint does not explicitly set out which subsection these alleged violations fell under, simply stating that [defendant] breached the statute . . . ." (ECF No. 72 at 19). The court agrees. Although plaintiff does not specify which subsections defendant allegedly violated, the relevant provisions of NRS 686A.310(1) appear to be as follows:

> (a) Misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue.

. . .

(c) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

(d) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

(e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

. . .

(l) Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

. . .

(n) Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim.

. . .

Nev. Rev. Stat. § 686A.310(1).

Here, defendant notes that it did not deny either of plaintiff's claims, it paid "most of the medical expenses" that plaintiff incurred, and it issued benefits when appropriate information was received. (ECF No. 72 at 19). Defendant argues that the claims it has not paid "are those that have been determined to not be related to either of the subject motor vehicle accidents" after what defendant deemed to be a "reasonable standards investigation." *Id.* Defendant also contends that "no misrepresentations of coverage have been made." *Id.*

The court finds that, consistent with the discussion of plaintiff's bad faith claim, defendant's investigation may have been unreasonable. Further, the court finds that there may have been a misrepresentation of coverage. For instance, plaintiff argues as follows:

[Defendant] relied upon Dr. Estela's opinion to termination the January 24, 2014, claim, yet it never evaluated the reasonableness [of] Dr. Estela's opinion that [plaintiff] had reached MMI . . . Instead, [defendant] blindly followed Dr. Estela's opinion because

it gave [defendant] the pretext it had been seeking since August 2014, to terminate [plaintiff's] claim.

(ECF No. 77 at 19).

MMI was never mentioned in plaintiff's insurance contract. (*See generally* ECF No. 41-1). Ms. Collier testified that defendant "should not add conditions to the policy that are not contained in the policy." (ECF No. 77-6 at 5). Ms. Collier further testified that MMI is "just one factor in determining whether something is covered" under the policy and that insureds could continue "receiving treatment for chronic pain after [they had] reached [MMI] . . . ." *Id.* at 21. Nonetheless, defendant terminated plaintiff's January 2014 claim based on Dr. Estela's conclusion that plaintiff had reached MMI for injuries sustained in that accident. (ECF No. 77 at 19); (*see also* ECF No. 77-6 (deposition of Brenda Michelle Collier)).

Accordingly, the termination of plaintiff's claim on the basis of MMI may have been a misrepresentation of coverage. Further, the investigation—using three separate doctors to conduct two records reviews and an IME—to reach the MMI conclusion may have been unreasonable. Thus, there is a genuine issue of material fact. The court denies defendant's motion for summary judgment.

### B. Duty to cooperate

Where an insurance contract is unambiguous, the court will interpret and enforce it according to the plain meaning of its terms to accomplish the intent of the parties. *Valentine v. State Farm Mut. Auto. Ins. Co.*, 105 F. Supp. 3d 1176, 1181 (D. Nev. 2015). "When an insurance policy explicitly makes compliance with a term in the policy a condition precedent to coverage, the insured has the burden of establishing that it complied with that term." *Id.* at 1182 (citing *Las Vegas Metro. Police Dep't v. Coregis Ins. Co.,* 256 P.3d 958, 962 (Nev. 2011)). "In cases where the plaintiff has a pre-existing condition and then suffers injury to that same area, it is the plaintiff's initial burden to prove that the accident was a cause of the plaintiff's claimed injury." *Id.* (citing *Kleitz v. Raskin,* 738 P.2d 508, 510 (Nev. 1987)).

However, an insurer may expressly waive the insured's duty to cooperate, or it may do so by conduct. "Waiver requires the intentional relinquishment of a known right." *Nevada Yellow*

*Cab Corp. v. Eighth Judicial Dist. Court ex rel. Cty. of Clark*, 152 P.3d 737, 740 (Nev. 2007) (citing *Mahban v. MGM Grand Hotels, Inc.,* 691 P.2d 421, 423 (Nev. 1984)). However, "[i]f intent is to be inferred from conduct, the conduct must clearly indicate the party's intention." *Id.* (citing *Host Int'l, Inc. v. Summa Corp.*, 583 P.2d 1080 (Nev. 1978)). In order to infer an intent to waive its rights, the party's conduct must be "so inconsistent with an intent to enforce the right as to induce a reasonable belief that the right has been relinquished." *Id.* (citing *Hudson v. Horseshoe Club Operating Co.*, 916 P.2d 786, 792 (Nev. 1996)). Due to the factual nature of this inquiry, "[w]hether there has been a waiver is ordinarily a question for the trier of fact." *See, e.g.*, *McKellar v. McKellar*, 871 P.2d 296, 297 (Nev. 1994); *Parkinson v. Parkinson*, 796 P.2d 229, 231 (Nev. 1990); *Mill-Spex, Inc. v. Pyramid Precast Corp.*, 710 P.2d 1387, 1388 (Nev. 1985).

Plaintiff does not suggest that she ever informed defendant that she had preexisting back problems. (*See generally* ECF Nos. 70; 81). Instead, plaintiff contends that, under a strict interpretation of the cooperation clause in her insurance policy, she complied with her obligation to cooperate when she submitted to the IME and gave defendant her medical authorizations. (ECF No. 70 at 7–8). Plaintiff further argues that "there is no evidence [plaintiff] concealed anything from or misrepresented any fact to Dr. Estela, let alone that her conduct was willful." *Id.* at 9. Plaintiff goes on to contend that defendant "knew Dr. Belsky had provided treatment to [plaintiff] before May 2013." *Id.* Thus, by plaintiff's estimation, defendant waived the right to enforce plaintiff's duty to cooperate because it elected not to investigate plaintiff's preexisting condition despite having a medical authorization. *Id.* at 10–11.

However, defendant points out that, even if it had some knowledge of a preexisting condition, plaintiff deliberately "failed to apprise [defendant] of the true facts regarding some of her injuries," particularly regarding the extent of those injuries. (ECF No. 79 at 3). For instance, plaintiff's preexisting "injury was so significant that by December 2011, Dr. Perry had recommended low back surgery." *Id.* As a result of this preexisting condition, plaintiff began a course of treatment with Dr. Belsky and IPM prior to the May 2013 accident. *Id.* at 3–4.

James C. Mahan
U.S. District Judge

1    Defendant notes that, despite this record of severe back problems and treatment, Dr.

2    Belsky's treatment records in this case indicated that plaintiff "[d]enie[d] any prior neck or back

3    pain." *Id.* at 5. Plaintiff also made no mention of the preexisting condition, surgery

4    recommendation, or her prescription medications[2] at the Dr. Estela's IME. *Id.* at 5–6. Defendant

5    argues that it only discovered the nature and extent of plaintiff's preexisting condition through

6    discovery in this case. (ECF No. 41 at 2 ("Now, after certain discovery has been conducted,

7    evidence has been gathered that tends to prove that [p]laintiff . . . has failed to properly cooperate

8    under the policy in seeking medical payments coverage.").

9    The court finds that there are genuine issues of material fact regarding whether plaintiff

10    cooperated with defendant's investigation into her claim or whether she misrepresented and

11    omitted material facts related thereto. Although plaintiff argues that she complied with the terms

12    of the insurance contract, she ignores the provision that provides that she was required to

13    "include all details [defendant] may need to determine the amounts payable" in her written proof

14    of claim. (ECF No. 70 at 7 (capitalization omitted)). Whether plaintiff had a preexisting injury

15    necessarily impacts the nature of her claim, particularly because the record suggests she claimed

16    the May 2013 accident caused her back injuries, which the January 2014 accident aggravated.

17    Waiver may be applicable in this case because defendant continued to pay plaintiff's

18    medical payment claims after being put on notice of her preexisting back condition. However,

19    the question of waiver-by-conduct is one of fact and is therefore properly decided by a jury.

20    Thus, there is a genuine issue of material fact regarding whether plaintiff satisfied her contractual

21    obligation of cooperation. The court denies her motion for partial summary judgment.

22    *C. Referral to the Special Investigation Unit*

23    Plaintiff's motion for partial summary judgment regarding defendant's basis for referring

24    her claims to the SIU is, in sum and substance, more akin to a motion in limine. The main thrust

25    of plaintiff's argument is that defendant "used the evidentiary privileges of attorney-client and

26    work product privilege to prevent [plaintiff] from conducting discovery in [defendant]'s

27

28        [2] Dr. Belsky's treatment notes indicate that plaintiff "was taking Lortab (a narcotic), Lidoderm patches and oxycodone" and "was also prescribed Norco, a narcotic." (ECF No. 79 at 6). Nonetheless, plaintiff told Dr. Estella that she was not taking medication. *Id.*

investigation of Dr. Belsky's general business practices. Therefore, [defendant]'s investigation of Dr. Belsky and any alleged suspicious activities discovered as part of that investigation are not admissible." (ECF No. 68 at 7); (*see also* ECF No. 82 (arguing that defendant cannot use these privileges as both a "sword and a shield")).

Plaintiff moved to compel defendant to produce certain documents relating to its lawsuit against Dr. Belsky. (ECF No. 21). Magistrate Judge Ferenbach denied the motion, holding that the documents were privileged and that "[t]here is no substantial or compelling need for [d]efendant to produce its investigative files regarding Belsky." (ECF No. 54 at 4–5). Plaintiff argues—as she did in support of her motion to compel—that it was unreasonable for defendant to deny or delay payment of her claims because of its suspicion of Dr. Belsky. Magistrate Judge Ferenbach noted that "[t]he existence of the investigation and subsequent case against Belsky provide support for [p]laintiff's argument." (ECF No. 54 at 4).

Viewed in the light most favorable to defendant, a reasonable finder of fact could conclude that defendant had a reasonable basis to refer plaintiff's claims to the SIU. As defendant succinctly argued:

> Here, [plaintiff]'s claim was referred to SIU for handling based on several factors and conducted [plaintiff] it believed was necessary under the circumstances. The fact that [plaintiff] had more than one pending UIM claim, that [plaintiff] sought treatment from the same medical provider for alleged injuries sustained in both motor vehicle accidents, and that the treating provider, Belsky, is coincidentally under investigation for fraudulent business practices, altogether are sufficient reasonable basis to investigate further the validity of [plaintiff]'s medical payment claims.

(ECF No. 80 at 7). Further, the court can take judicial notice of the fact that defendant sued Dr. Belsky in case number 2:15-cv-02265-MMD-CWH, and the complaint in that case alleges state and federal RICO, conspiracy, and fraud. *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("[The court] may take judicial notice of undisputed matters of public record, *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), including documents on file in federal or state courts. *See Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002).").

Thus, the court denies plaintiff's motion for partial summary judgment. There are facts in the record that suggest defendant may have had a reasonable basis to refer plaintiff's claims to

James C. Mahan
U.S. District Judge

the SIU.  The court does not reach the question of whether defendant's post-SIU-referral conduct when handling plaintiff's claims was reasonable.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for partial summary judgment regarding "no reasonable basis to refer Mrs. Thompson to the Special Investigation Unit" (ECF No. 68) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment regarding breach of the duty to cooperate (ECF No. 70) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (ECF No. 72) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's motion to strike defendant's reply (ECF No. 87) be, and the same hereby is, DENIED.

DATED December 27, 2019.

_____
UNITED STATES DISTRICT JUDGE